UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEVADA POWER COMPANY, | Case No. 2:15-CV-264 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| TRENCH FRANCE SAS, and SIEMENS AG OSTERREICH, | |
| Defendant(s). | |

Presently before the court is defendant Siemens AG Osterreich's ("Siemens") motion to dismiss. (ECF No. # 44).[1] Plaintiff Nevada Power Company ("Nevada Power") filed a response (ECF No. # 48), and Siemens filed a reply. (ECF No. # 52).

**I.   Background**

Nevada Power is a Nevada corporation. (ECF No. 1, ¶ 3). Elin was an Austrian corporation until it was acquired by Siemens over ten years ago. (*Id.*, ¶¶ 5,6). Siemens is an Austrian corporation with a principal place of business located in Elin's former facility. (*Id.*, ¶ 6). Siemens is a successor in interest to Elin. (*Id.*, ¶ 7).

In 1998, Nevada Power contracted with Elin to purchase two specialized high-voltage transformers. (*Id.* ¶ 10). Elin also installed high-voltage bushings into transformers in Nevada Power's Crystal Substation, located north of Las Vegas, NV. (*Id.*, ¶¶ 11,12). Nevada Power and Elin agreed to a five-year warranty on manufacturing defects to the transformers' material and

---

[1] Defendant requests a hearing on this matter. At this time, the court declines to hold a hearing.

**James C. Mahan**
**U.S. District Judge**

1  workmanship. (Exh. 1). The warranty lasted until approximately 2003. *Id.* The warranty agreement
2  included a provision capping liability at $13,794,884. (ECF No. 48).

3        In May of 2011, and on September 14, 2011, bushings at Nevada Power's substation failed,
4  causing fire and damage. (ECF No. 1, ¶¶ 16,17). In early 2012, Nevada Power removed another
5  bushing after it failed testing. (*Id.*, ¶ 18). Representatives from the parties attended an inspection
6  in California. (*Id.,* ¶ 20). The inspection revealed that the bushings were manufactured defectively.
7  *Id*. Originally, the design called for symmetrical step-wise foil insulation layers within a bushing.
8  (*Id.*, ¶ 21). However, the bushing's asymmetrical insulation did not conform to the symmetrical
9  design. (*Id.,* ¶ 22).

10       Nevada Power asserts the bushings' failure results from the manufacturing defect. (*Id*., ¶
11 25). It quantifies damages at $9,063,908.00 under NRS 704.805. (*Id*., ¶ 29). Nevada Power's
12 complaint alleges strict product liability, a claim arising in tort, as the sole cause of action against
13 Siemens. (*Id.*, ¶ 33).

14 **II.  Legal Standard**

15       A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief
16 can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and
17 plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);
18 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed
19 factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the
20 elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).
21 "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at
22 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to
23 "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

24       In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply
25 when considering motions to dismiss. First, the court must accept as true all well-pled factual
26 allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.
27 *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory
28 statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual

**James C. Mahan**
**U.S. District Judge**

- 2 -

allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id*. (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "[f]irst, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

**III. Discussion**

Nevada Powers fails to state a legally cognizable claim. The economic loss doctrine shields Siemens from liability based on purely economic losses. The court rejects plaintiff's assertion that NRS 704.805(4) creates an independent cause of action. Even if it does, plaintiff has not pled that Siemens negligently destroyed property used "in the production, distribution or delivery of the service provided by" Nevada Power. NEV. REV. STAT. 704.805(4). Plaintiff also contends that the contract between Nevada Power and Elin creates tort liability. The court reads the provision in question as a cap on liability were a claim to arise, not an attempt to create a private cause of action.

    *A. Economic loss doctrine prevents a claim*

Plaintiff argues Siemen's manufacturing defects resulted in "substantial damage at the substation." (ECF. No. 1). Defendant argues that the damages consist solely of damages to the transformer itself and plaintiff's claim is thus precluded by the economic loss doctrine. The court

James C. Mahan
U.S. District Judge

- 3 -

agrees with the defendant. Plaintiff's strict liability claim is precluded by the economic loss doctrine.

A tort claim is precluded by the economic loss doctrine when plaintiff seeks to recover "purely economic losses." *Peri & Sons Farm, Inc. v. Jain Irr., Inc.*, 933 F. Supp. 2d 1279,1283 (D. Nev. 2013). Purely economic loss is "the loss of the benefit of the user's bargain… including … the cost of repair and replacement of the defective product … without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 116 Nev. 250, 257 (Nev. SCt. 2000) (*citing American Law of Products Liability* (3d) § 60:39, at 69 (1991).

The complaint and response are vague with respect to what "substantial damages at the substation" resulted from the transformer destruction. Absent further explanation from the plaintiff, it would be "unfair to require the opposing party to be subjected to the expense of discovery and continued litigation" based on plaintiffs vague reference to damages "at the substation." *Starr*, 652 F.3d at 1216; (ECF. No. 1, ¶ 16).

The complaint alleges that damages happened "at" the substation, not "to" the substation. *Id.* Plaintiff makes no plain allegation of personal injury or damage to property beyond the transformers themselves. *See generally id.*; *Calloway*, 116 Nev. at 257. The seemingly intentional vagueness in the complaint does not give Siemen proper notice of any further damage. *Iqbal*, 129 S.Ct. at 1949. Further, plaintiff's response fails to identify any damages "at the substation" beyond damage to the transformer itself, indicating to the court that those were the only damages at the substation.

Therefore, the court finds the economic loss doctrine precludes Nevada Power's claim. The complaint is construed to allege damage to the transformers only, not to the substation. Damage to the transformer is governed by contract law, not tort law. Accordingly, no claim exists.

. . .

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

*B) The Contract does not give rise to tort liability.*

The limitation on liability clause in the sale agreement from Nevada Power does not create a cause of action.[2] The limitation of liability, as its name implies, only limits compensation were a tort to arise. It does not and cannot create a cause of action.[3]

On-face, the contract does not create tort liability. Contract interpretation does not go beyond the four-corners of the document if the plain language is facially clear. *Southern Trust v. K & B Door Co.*, 104 Nev. 564, 568 (1998). Here, the language is facially clear. The contract provides that Elin "shall not be liable in contract, in tort … or for any … damages" exceeding roughly thirteen million dollars. Construing the contract to create some cause of action requires improper inferences and would produce absurd results. *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 617 (Nev. 2014).

Even assuming *arguendo* that the parties could negotiate a cause of action into existence, the provision does not express the intent to opt out of the economic loss doctrine. Nevada Power's suit over a manufacturing defect based on a product sold almost twenty years ago is the exact type of "unlimited economic liability" the economic loss doctrine prevents. *Halcrow, Inc. V. Eighth Jud. Ct.*, 302 P.3d 1148 (S. Ct. Nev. 2013).

*C) NRS 704.805 does not create a cause of action.*

NRS 704.805(4) does not create an independent cause of action exempt from the economic loss doctrine. Plaintiff analogizes to causes of action authorized by two other Nevada statutes for which courts found the economic loss doctrine did not apply. However, these statutes are distinguishable.

In *Olson*, the court found that the statute explicitly exempts the cause of action from "any conflicting law otherwise applicable to the claim or cause of action." *Olson v. Richard*, 120 Nev.

---

[2] This court may consider materials submitted with the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). The court takes judicial notice of the contract.

[3] By definition a tort is "a violation of a duty imposed by law, a wrong independent of contract." *Benard v. Rockhill Dev. Co.*, 103 Nev. 132, 135 (1987)

**James C. Mahan**
**U.S. District Judge**

- 5 -

240, 244 (S. Ct. Nev. 2004) (*quoting* NEV. REV. STAT. 40.635(2)). The statute also expressly makes the contractor liable for building houses poorly. *Id*.

In *Davis*, the court allowed the claim to succeed because NRS 645.252 created an independent legal duty with statutory damages independent to any duties established by contract.[4] *Davis v. Beling*, 278 P.3d 501 (S.Ct. Nev. 2012). The statute created a right of action to recover damages from a realtor that breached his or her duty to a client. *Id.* In both cases, the statute created a cause of action whereby the parties were recovering for breach of a duty independent of economic losses.

Unlike those statutes, NRS 704.805(4) does not create a cause of action and cannot reasonably be read as covering products liability cases. If the Nevada legislature intended the statute to apply to product liability, it would have introduced strict liability in the text. Instead, it defines the damages available under common law for negligent and intentional destruction of public utilities' property. *See* NEV. REV. STAT. 704.805.

Even if it did create an independent cause of action, plaintiff has not sufficiently pled that Siemens conduct falls under the statute. Under NRS 704.805(4), a party is financially liable if they (1) willfully or negligently (2) injure or destroy property (3) used in the production, distribution, or delivery of public utility services. NEV. REV. STAT. 704.805. The statute covers financial costs associated with repairing or replacing destroyed property while it is currently in use.

Here, plaintiff does not allege Siemens injured or destroyed property *in use*. Instead, it argues the property was destroyed as a result of a manufacturing defect occurring before the property went into use. To create liability, a utility company's property has to be used for energy production *when* a party willfully or negligently destroys or injures it. Defendant's alleged conduct occurred before plaintiff asserts the transformers were in use. Moreover, the inclusion of "negligence" or "willfulness" as standards in the statute expressly precludes a standard of strict liability. *See Shoshone Coca-Cola Bottling Co. v. Dolinski*, 82 Nev. 439, 442 (1966).

---

[4] "The economic loss doctrine does not, however, bar the recovery of purely economic losses when the defendant intentionally breaches a duty that is imposed independently of the obligations arising from contract." *Davis v. Beling*, 278 P.3d 501 (S.Ct. Nev. 2012)

**James C. Mahan**
**U.S. District Judge**

- 6 -

Based on the forgoing, the statute does not create a cause of action against Siemens. Therefore, Nevada Power has failed to state a plausible claim for relief because recovery is precluded under the economic loss doctrine.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, AJUDGED, AND DECREED that Defendant Siemens AG Osterreich's motion to dismiss (ECF No. 44) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the plaintiff Nevada Power Company's complaint (ECF No. 1) be, and the same hereby is, DISMISSED without prejudice.

The clerk shall enter judgment accordingly and close the case.

DATED June 1, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**